UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| TRUSTEES OF THE N.E.C.A./LOCAL 145 I.B.E.W. PENSION PLAN, AS COLLECTION AGENT FOR ALL FRINGE BENEFITS, <br><br> Plaintiff, <br><br> v. <br><br> LINDA K. MAUSSER, INDIVIDUALLY AND d/b/a QCA ELECTRIC, <br><br> Defendant. | Case No. 4:18-cv-04045-SLD-JEH |

## ORDER

Before the Court is a motion for partial summary judgment, ECF No. 33, filed by Plaintiff Trustees of the N.E.C.A./Local 145 I.B.E.W. Pension Plan, as Collection Agent for All Fringe Benefits. For the following reasons, the motion is GRANTED IN PART and DENIED IN PART.

### BACKGROUND[1]

The N.E.C.A./Local 145 I.B.E.W. Union (the "Union") has entered into Collective Bargaining Agreements ("CBAs") with numerous employers. Plaintiff receives contributions from these employers pursuant to the agreements. Defendant, an individual and the sole proprietor of QCA Electric, entered into a Letter of Assent with the Union, obligating her to abide by a CBA (titled "Inside Agreement") and its successor agreements and an Agreement and

---

[1] At summary judgment, the movant is to provide a list of undisputed material facts, CDIL-LR 7.1(D)(1)(b), to which the nonmovant must respond by conceding or refuting that each of these facts is undisputed, *id.* 7.1(D)(2)(b)(1)–(2). Thus, the factual background of this case is drawn from paragraphs of Plaintiff's statement of undisputed material facts, Pl.'s Mot. Partial Summ. J. 2–4, ECF No. 33, to which Defendant has indicated assent or no opposition.

1

Declarations of Trust (the "Trust Agreement"). Under these agreements, Defendant was required to make contributions to the N.E.C.A./Local 145 I.B.E.W. Pension Plan (the "Plan") for each hour worked by QCA Electric's construction employees.

On March 7, 2018, Plaintiff filed this lawsuit pursuant to Sections 1132 and 1145 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461, asking the Court to order that an accounting be taken of the hours worked and wages received by Defendant's employees to determine the amount of contributions required to be paid to Plaintiff and to order Defendant to pay any delinquent pension fund contributions, interest, liquidated damages, and audit and attorney's fees. Compl. 1, 5, ECF No. 1. Plaintiff now moves for partial summary judgment on the issue of Defendant's liability for Union contributions from January 2015 to the present and requests that the Court compel Defendant to comply with an audit. Pl.'s Mot. Partial Summ. J. 4, 7. Plaintiff acknowledges that a genuine dispute remains as to the exact amount of contributions owed to Plaintiff by Defendant and accordingly does not move for summary judgment of the issues of damages, costs, and attorney's fees. *Id*. at 1.

## DISCUSSION

### I.     Legal Standard

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where the movant has properly moved for summary judgment, the nonmovant must "respond . . . by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial," *Grant v. Trs. of Ind. Univ*., 870 F.3d 562, 568 (7th Cir. 2017),

2

such as depositions, affidavits, stipulations, documents, or interrogatory answers, Fed. R. Civ. P. 56(c)(1)(A).  The nonmovant "waives any arguments that were not raised in its response to the moving party's motion for summary judgment," *Nichols v. Mich. City Plant Plan. Dep't*, 755 F.3d 594, 600 (7th Cir. 2014); likewise, should the nonmovant fail to respond to any fact listed by the movant, this "will be deemed an admission of the fact," CDIL-LR 7.1(D)(2)(b)(6); *see also Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) (noting that the Seventh Circuit has "consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission").  At this stage, the court cannot "make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts" but must instead "constru[e] the record in the light most favorable to the nonmovant."  *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).  However, the nonmovant "is not entitled to the benefit of inferences that are supported by only speculation or conjecture." *Nichols*, 755 F.3d at 599 (quotation marks omitted).

    **II.**    **Analysis**

        **a. Defendant's Liability for Union Contributions from January 2015 to the Present**

The first issue on which Plaintiff moves for summary judgment is Defendant's liability for paying Union contributions during the period of January 2015 to the present.  Pl.'s Mot. Partial Summ. J. 4.  Defendant opposes this.  Def.'s Resp. Mot. Partial Summ. J. 1, ECF No. 35.

It is unclear from the language of the motion whether Plaintiff seeks summary judgment solely as to the issue of whether Defendant was responsible for paying Union contributions during the relevant period or whether it further asks the Court to find that Defendant or her company engaged in work for which they failed to pay the necessary contributions.  In the interest of completeness, the Court will address both issues.

Plaintiff argues that there is no genuine dispute of fact as to Defendant's obligation to pay contributions because she signed a Letter of Assent, binding her to comply with certain agreements compelling the payment of contributions, and because she or her company "was engaged in work covered by the [CBA]." Pl.'s Mot. Partial Summ. J. 4–7. In support of its motion, Plaintiff appends the Letter of Assent, Pl.'s Mot. Partial Summ. J. App. 1, ECF No. 33-1[2]; excerpts from the Inside Agreement that was in effect between June 3, 2013 and May 31, 2016, Pl.'s Mot. Partial Summ. J. App. 2–13, ECF No. 33-1 ("Inside Agreement I"); excerpts from the Inside Agreement in effect between May 30, 2016 and May 31, 2019, Pl.'s Mot. Partial Summ. J. App. 14–25, ECF No. 33-1 ("Inside Agreement II"); excerpts from the Trust Agreement executed on November 17, 2014, Pl.'s Mot. Partial Summ. J. App. 26–35, ECF No. 33-1; the Amendment to the Trust Agreement executed on October 19, 2017, Pl.'s Mot. Partial Summ. J. App. 36–38, ECF No. 33-1 ("Trust Agreement Amendment"); and the Union's Annuity and Profit Sharing Plan, Pl.'s Mot. Partial Summ. J. App. 39–55, ECF No. 33-1. Plaintiff also provides payroll reports and invoice details from every month in 2015, Pl.'s Mot. Partial Summ. J. App. 56–67, ECF No. 33-1 ("Payroll and Invoices"), and lists of job locations from 2015 through 2018, Pl.'s Mot. Partial Summ. J. App. 68–72, ECF No. 33-1 ("Job Locations").

These documents show that Defendant did agree to pay Union contributions. Defendant, on behalf of QCA Electric, signed the Letter of Assent on April 20, 2004, authorizing the Union to be the company's collective bargaining representative and agreeing to be bound by the current and any subsequently approved Inside Agreement, Letter of Assent 1, which Defendant admits, *see* Def.'s Resp. Mot. Partial Summ. J. 2. The Inside Agreement requires Defendant to make

---

[2] Page numbers for documents from the Appendix refer to the Appendix's NECA-IBEW numbers located in the lower right-hand corner of the documents.

monthly contributions to various entities including the Plan based on the number of hours the company spent engaging in covered activities and on the gross payroll and to "file a monthly electronic payroll report . . . for each contribution." Inside Agreement I § 2.26(A). Under the Trust Agreement, "[t]he Trustees . . . have the power to demand, collect, and receive Employer Contributions" and may seek to "effectuate the collection of such Employer Contributions" by filing lawsuits. Trust Agreement Art. VI § 1. Plaintiff asserts that Defendant has not withdrawn from the agreement at any point after signing the Letter of Assent, Pl.'s Mot. Partial Summ. J. 7, and Defendant does not dispute this. Thus, it has been established that Defendant was responsible for paying contributions as required by the agreements during the period at issue.

The Court also finds that it has been established that Defendant's company engaged in work covered by the CBA between January 2015 and the present. The invoice details provided by Plaintiff illustrate that for several months in 2015, Defendant submitted reports per the Inside Agreement detailing the number of hours worked by QCA Electric that month and the corresponding payment she was required to submit to various Union entities. *See* Payroll and Invoices 56–57, 61–64, 66–67. Defendant does not dispute that she submitted these and in fact attaches the same invoice details to her response to Plaintiff's motion. *See* Def.'s Resp. Mot. Partial Summ. J. 9–16.[3] She also states in her response that "Defendant paid and filed all contributions." *Id*. at 4. While she also includes summaries of what appear to be her own wages between 2015 and 2018 that indicate that she received no wages during that time period, *id*. at 5–8, and states that "[f]rom January 2015 to the present, Defendant Linda K Mausser did not engage in electrical work" and "did not submit any hours claiming that she had done any electrical work," *id*. at 2, the fact that Defendant attaches the invoice details and claims to have

---

[3] Because Defendant attaches these documents directly to her response and does not provide separate page numbers, the documents are cited using the page numbers assigned by CM/ECF.

paid all contributions indicates to the Court that while Defendant herself may not have carried out any electrical work during the relevant period, QCA Electric or an employee thereof did engage in work for which Defendant is required to pay contributions.

For these reasons, to the extent that Plaintiff moves for summary judgment on the issue of whether Defendant was obligated to pay contributions between January 2015 and the present and engaged in covered work necessitating the payment of such contributions, the Court grants the motion.

However, the Court finds that there remains a genuine dispute of fact as to whether Defendant failed to pay any contributions that she was required to pay. Plaintiff states that "Defendant engaged in activities within the scope of work from January 2015 to the present and has made no contributions to the Plan" and that "Defendant's failure to make contributions violates the [CBA], the Trust Agreements, and ERISA section 29 U.S.C. § 1145." Pl.'s Mot. Partial Summ. J. 6–7. Defendant claims instead that "Defendant QCA Electric paid all contributions due to [the Plan]." Def.'s Resp. Mot. Partial Summ. J. 2. Plaintiff cites in support of its argument the lists of job locations, which were produced by Defendant in discovery. *Id*. at 6. However, without additional context not provided by Plaintiff in its motion, the Court does not find that the lists are sufficient to show that there is no dispute as to Defendant's failure to pay any required contributions. The lists are spare, consisting merely of the title "[Year] Job Locations" and a series of addresses. Job Locations 68–72. In citing them in support of the argument that Defendant has failed to pay required contributions, Plaintiff merely states that it has provided "[a] comprehensive list of construction projects that Defendant has worked on, either as an electrical contractor or as a subcontractor," Pl.'s Mot. Partial Summ. J. 6, but provides no further guide to interpreting them, implying that the Court should infer from the lists

6

of addresses that Defendant's company performed electrical work on those properties, that the work it performed was covered by the CBA, that contributions were therefore required to be paid, and that Defendant subsequently failed to pay them. As this would require significant extrapolation, any attempt by the Court to interpret the lists in this way would go against its obligation to "constru[e] the record in the light most favorable to the nonmovant" at summary judgment, *Payne*, 337 F.3d at 770. And the Court is not obliged to comb through the docket in search of additional explanation for the meaning of the lists. *See* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").

Thus, to the extent that Plaintiff seeks summary judgment on the issue of Defendant's failure to pay any required contributions, the motion is denied.

### b. Audit

Plaintiff also asks the Court to order Defendant to comply with an audit because there is no genuine dispute of material fact as to Defendant's requirement to comply with such an audit. Pl.'s Mot. Partial Summ. J. 1–2.[4]

---

[4] Plaintiff argues that "Defendant has failed to comply with an audit in violation of the [CBA] and Trust Agreements" and "has not turned over the requested audit documentation from January 2015 to the present." Pl.'s Mot. Partial Summ. J. 8. Defendant responds that she has already "submitted all information required in audit as shown in court documents." Def.'s Resp. Mot. Partial Summ. J. 2. However, Plaintiff points out that the information Defendant alleges she submitted was actually part of Defendant's discovery submissions to Plaintiff in this case and not part of an audit. Pl.'s Reply 3, ECF No. 36. Defendant adduces no other evidence showing that she already underwent an audit for the relevant period. She attaches a list detailing which employers have been audited every year since 2011, but QCA Electric only appears on the list of audits that took place in 2012. Def.'s Resp. Mot. Partial Summ. J. 22–25. She argues that the fact that QCA Electric "was not on the list" (although the Court notes that it does appear once) is proof of Plaintiff's "unlawful discriminatory practices" because "Defendant has been audited 5 out of the last 10 years and have [sic] not once shown that Defendant was on the [audit] list." *Id.* at 4. Whatever Defendant believes this list proves, she has not identified any evidence showing that her company underwent an audit of its records from January 2015 to the present, and Plaintiff may prevail at summary judgment by pointing to an absence of evidence supporting Defendant's argument, *see Celotex*, 477 U.S. at 325 ("[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."). Defendant has failed to show the Court that she has already complied with an audit for the relevant period.

The documents provided by Plaintiff in support of its motion show that Defendant must comply with an audit. Section 2.26(C) of the Inside Agreement provides that "all contractors shall submit and participate in an auditing program conducted by the Pension Trustees" and "expressly agree to provide the pension Trustees, or agents thereof, with all payroll records, reports, and other reasonably requested information necessary to conduct a compliance audit." The subsequent provision states that "[a]ll Employers signatory to the . . . Labor Agreement will be subject to audits on a random basis." Inside Agreement I § 2.26(D). Under the Trust Agreement, "[t]he Trustees are empowered and authorized to take any and all reasonable steps necessary to audit the Employers and collect Employer delinquencies." Trust Agreement Art. VI § 5. And the Trust Agreement Amendment amends Article IV, Section 8 of the Trust Agreement to state that employers are "required to assist and cooperate with authorized representatives of the Fund, its attorneys, auditors, and other authorized representatives in the prosecution of claims for or against the Fund," in particular by "provid[ing] to the Trustees on request in the course of any audit deemed necessary or advisable by the Trustees" certain information including records of the hours worked by employees. Trust Agreement Amendment ¶ 1.

Where the trust documents governing a benefit plan grant authority to the trustees to conduct audits, such audits are consistent with ERISA. *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 581 (1985). Here, it is clear (and undisputed by Defendant) that the CBA and the Trust Agreement require Defendant to comply with audits by the Trustees. The Court therefore grants Plaintiff's motion on this issue and orders Defendant to comply with an audit, providing every company record from January 2015 through the present that is relevant to determining the amount of contributions owed by Defendant during that period.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for partial summary judgment, ECF No. 33, is GRANTED IN PART and DENIED IN PART. To the extent that Plaintiff seeks summary judgment on the issue of Defendant's obligation to pay contributions between January 2015 and the present, the motion is GRANTED. To the extent that Plaintiff seeks summary judgment on the issue of Defendant's failure to pay any required contributions, the motion is DENIED. Defendant is ordered to comply with an audit. As there is still a genuine dispute over the amount of the unpaid contributions, the issue of damages, along with costs and attorney's fees, remains unresolved.

Entered this 9th day of December, 2020.

                                        s/ Sara Darrow
                                        SARA DARROW
                              CHIEF UNITED STATES DISTRICT JUDGE