UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| TRUSTEES OF THE N.E.C.A./LOCAL 145 I.B.E.W. PENSION PLAN, AS COLLECTION AGENT FOR ALL FRINGE BENEFITS,<br><br>        Plaintiff,<br><br>v.<br><br>LINDA K. MAUSSER, individually and d/b/a QCA ELECTRIC,<br><br>        Defendant. | Case No. 4:18-cv-04045-SLD-JEH |

ORDER

This is an action brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461. Plaintiff Trustees of the N.E.C.A./Local 145 I.B.E.W. Pension Plan, as Collection Agent for All Fringe Benefits, sued Defendant Linda K. Mausser, individually and d/b/a QCA Electric, for unpaid contributions allegedly due to it pursuant to collective bargaining agreements ("CBAs") and an Agreement and Declarations of Trust ("Trust Agreement"). On December 9, 2020, the Court granted in part Plaintiff's motion for partial summary judgment, finding that Defendant was obligated under these agreements to pay contributions between January 2015 and the present and ordering Defendant to comply with an audit. Dec. 9, 2020 Order 9, ECF No. 37. Plaintiff hired Calibre CPA Group, PLLC ("Calibre Group") to conduct the audit, *see* Bench Trial Tr. 24:3–5, ECF No. 82; Calibre Group's employee, Tim Kalnes, actually performed the audit, *see id*. at 33:17–18; 35:14–36:2.

A bench trial followed on November 23, 2022 to resolve whether and in what amount Defendant was delinquent in her contributions. *See* Nov. 23, 2022 Min. Entry. Both parties submitted proposed findings of fact and conclusions of law. *See* Pl.'s Proposed Findings of Fact

1

& Concl. of Law, ECF No. 74; Def.'s Proposed Findings of Fact and Conclusions of Law, ECF No. 80. On February 6, 2023, the Court entered its findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a). Feb. 6, 2023 Order, ECF No. 84. It found that Defendant was liable to Plaintiff for unpaid contributions, interest on the unpaid contributions, liquidated damages, costs, and attorney's fees. *Id*. at 18. It determined that Defendant had failed to keep records sufficient to permit Plaintiff to ensure that she made all required contributions, as mandated by ERISA. *Id*. at 8–10. It further concluded that, because of this failure, it was reasonable for Calibre Group to use Defendant's Schedule C tax forms to generate an estimate of the hours worked by Defendant's sole employee Chuck Mausser[1] in order to approximate the amount of unpaid contributions. *See id.* at 5, 13.

However, it found that Calibre Group's actual calculations were not a just and reasonable approximation of the unpaid contributions. *Id*. at 14–15. Kalnes estimated the hours Chuck worked by dividing the gross receipts shown on the Schedule C forms by the journeyman wage rate without accounting for the inclusion of materials costs in the gross receipts. *Id*. The Court determined that assuming the gross receipts consisted entirely of labor costs "would result in an unjust windfall for Plaintiff." *Id*. at 14. It thus directed Plaintiff to provide an updated audit report in which the cost of materials was subtracted from the gross receipts for each year prior to any further steps in the calculation. *Id*. at 17. It stayed judgment to allow for this recalculation, as well as for a recalculation of the amount of interest and liquidated damages and further briefing on Plaintiff's request for attorney's fees. *Id*. at 17–18.

On February 27, 2023, Plaintiff provided the requested updated audit and supplemental briefing. Pl.'s Suppl. Br., ECF No. 85. Defendant responded on March 13, 2023. Def.'s Resp.

---

[1] Charles "Chuck" Mausser is Defendant's spouse. *See* Bench Trial Tr. 88:23–24. Because he shares a last name with Defendant, the Court will refer to him as "Chuck."

Suppl. Br., ECF No. 86. Pursuant to the Court's directive, *see* Mar. 31, 2023 Text Order, Plaintiff filed a reply on April 10, 2023. Pl.'s Reply Suppl. Br., ECF No. 88.[2] Having considered the parties' supplemental briefing and the evidence submitted, the Court makes the following supplemental findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a).

## SUPPLEMENTAL FINDINGS OF FACT[3]

Plaintiff directed Calibre Group to recalculate the amount of unpaid contributions pursuant to the Court's February 6, 2023 Order. Pl.'s Suppl. Br. 1. Kalnes calculated the estimated hours Chuck worked each month in the relevant time period by looking to the Schedule C form for each year, subtracting the cost of materials from the gross receipts, dividing that amount evenly over the twelve-month calendar year, then dividing each month's amount by the applicable journeyman wage rate. *See* Revision Notes, Pl.'s Suppl. Br. Ex. A at 1, ECF No. 85-1 at 1. He then accounted for the hours Defendant did report and pay for. *See* Schedule of Discrepancies, Pl.'s Suppl. Br. Ex. A at 19–20, ECF No. 85-1 at 19–20; Pl.'s Reply Suppl. Br. 2 ("As . . . the recalculated audit shows, . . . Defendant does properly receive credit for the hours already reported and actually paid."). Next, he used the estimation of unreported hours to calculate the benefits due. *See* Revision Notes. The final calculations are contained in the updated audit report provided by Plaintiff (the "Updated Calibre Report"). *See* Updated Calibre

---

[2] On April 18, 2023, Defendant filed a surreply, Def.'s Surreply Suppl. Br., ECF No. 89, without seeking or receiving permission from the Court to do so. The Court thus STRIKES Defendant's surreply as improperly filed.
[3] The findings of fact are made in compliance with Federal Rule of Civil Procedure 52(a). To the extent that any finding of fact is deemed to be a conclusion of law, it is incorporated as such, and to the extent that any conclusion of law is deemed to be a finding of fact, it is incorporated as such.

The Court's initial findings of fact can be found in its February 6, 2023 Order. *See* Feb. 6, 2023 Order 2–6. The Court presumes familiarity with the initial findings.

Report, Pl.'s Suppl. Br. Ex. A at 4–18, ECF No. 85-1 at 4–18.  According to the Updated Calibre Report, Defendant owes $38,785.85 in unpaid contributions.  *Id*. at 3.

## SUPPLEMENTAL CONCLUSIONS OF LAW[4]

This is an action pursuant to Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3). Section 515 of ERISA provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under . . . the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of . . . such agreement."  29 U.S.C. § 1145.  A fiduciary may bring a civil action to enforce Section 515, *id*. § 1132(a)(3), and, in such an action, may recover the unpaid contributions and interest thereon; "an amount equal to the greater of interest on the unpaid contributions, or liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the [unpaid contributions]"; and reasonable attorney's fees and costs, *id*. § 1132(g)(2).  In its complaint, Plaintiff seeks an award of any delinquent pension fund contributions, interest on the unpaid contributions, liquidated damages, and audit and attorney's fees.  Compl. 5, ECF No. 1.

The Court previously found that Defendant agreed to be bound by the terms of the then-current CBA (titled "Inside Agreement") in place between it and the N.E.C.A./Local 145 I.B.E.W. Union, as well as by the terms and provisions of the Trust Agreement.  Dec. 9, 2020 Order 4–5; *see* June 3, 2013–May 31, 2016 Inside Agreement ("Inside Agreement I"), Pl.'s Trial Ex. 2; May 30, 2016–May 31, 2019 Inside Agreement ("Inside Agreement II"), Pl.'s Trial Ex. 3; Trust Agreement, Pl.'s Trial Ex. 4 at 1–19.  The Inside Agreement establishes that delinquent contributions "shall be assessed liquidated damages amounting to . . . []$50.00[] per day for each

---

[4] The Court's initial conclusions of law can be found in its February 6, 2023 Order.  *See* Feb. 6, 2023 Order 6–18. The Court presumes familiarity with the initial conclusions.

and every working day the . . . contributions are delinquent." Inside Agreement I § 2.26(B).[5] It further provides that when legal counsel must be sought to obtain delinquent contributions, "the [e]mployer shall be liable, in addition to all scheduled contributions, for all attorneys' fees and all reasonable costs incurred in the collection process including but not limited to filing fees, sheriff's costs, audit costs, interest and other expenses incurred." *Id*.

In the supplemental briefing ordered by the Court, Plaintiff seeks the following relief: 1) unpaid contributions in the amount of $38,785.85; 2) prejudgment interest in the amount of $8,609.92; 3) liquidated damages in the amount of $7,757.17; 4) audit and court costs in the amount of $1,265.00; and 5) attorney's fees in the amount of $14,176.25. Pl.'s Suppl. Br. 2. The Court will first address Plaintiff's request for unpaid contributions.

### I.   Unpaid Contributions

As the Court noted in its previous order, *see* Feb. 6, 2023 Order 8–17, this case is complicated by Defendant's failure to keep records sufficient to permit Plaintiff to ensure that she made all required contributions. Without adequate records, it is impossible to determine with certainty whether Defendant owes unpaid contributions. However, "an employer cannot escape liability [under ERISA] 'by hiding behind his failure to keep records as statutorily required.'" *Cent. Ill. Carpenters Health & Welfare Tr. Fund v. Struben*, No. 05-1094, 2009 WL 497393, at *11 (C.D. Ill. Feb. 24, 2009) (quoting *Brick Masons Pension Tr. v. Indus. Fence & Supply, Inc.*, 839 F.2d 1333, 1338 (9th Cir. 1988)). Rather, a fact-finding court may accept a reasonable estimation of the damages owed to a fund where "the absence of records that would allow [the court] to perform a precise calculation stems from [the employer's] failure to follow its statutory obligation." *See Trs. of Chi. Plastering Inst. Pension Tr. v. Cork Plastering, Inc.*, No. 03 C

---

[5] Because the CBA provisions referenced in this Order are identical in both Inside Agreements, the Court cites only to Inside Agreement I.

6867, 2007 WL 6080197, at *23 (N.D. Ill. Aug. 27, 2007). "It is enough under these circumstances if there is a basis for a reasonable inference as to the extent of the damages." *Struben*, 2009 WL 497393, at *22 (quotation marks omitted). Any assumptions made by the court must nonetheless be "just and reasonable." *See id*. (quotation marks omitted).

In the Updated Calibre Report, Calibre Group used the procedure dictated by the Court in the February 6, 2023 Order. *See supra* Section Suppl. Findings of Fact. It divided the estimation of labor costs for each year (calculated by subtracting the cost of materials from the gross receipts) over twelve months, then divided that figure by the appropriate journeyman wage rate. *See* Revision Notes. Kalnes testified at the bench trial that the journeyman wage rate was drawn from the applicable CBA. *See* Bench Trial Tr. 37:1–2*; see also id*. at 37:5–13 (Kalnes' testimony that to the best of his knowledge, he had access to the appropriate wage rates). Calibre Group estimated that the updated total amount of unpaid contributions comes to $38,785.85. Updated Calibre Report 3.

Defendant disputes Calibre Group's calculations, arguing that the updated audit should have used the full journeyman wage package—consisting of the wage rate plus the benefits received by the employee for each hour worked—instead of just the wage rate on its own. Def.'s Resp. Suppl. Br. 1.[6] She believes this is the appropriate figure because it "is what an employer pays the employee per hour." *Id*. (emphasis omitted). In support, she provides a document titled "Labor Cost Summary," which lists the wage package amount for various positions for the

---

[6] Defendant uses "wage rate" and "wage package" interchangeably at times in her response; the Court determines which figure she means based on context. *See* Def.'s Resp. Suppl. Br. 1–2. The Court uses "wage rate" to refer to the wage rate on its own and "wage package" to refer to the wage rate plus benefits. Defendant also states that Plaintiff is "using the journeyman benefits amount only," *id*. at 1, which the Court presumes is a mistake, as Plaintiff used the wage rate and not the benefits amount in its calculations, *see* Revision Notes.

6

period June 6, 2022 through December 4, 2022.  *See* Labor Cost Summary, Def.'s Resp. Suppl. Br. Ex. A, ECF No. 86 at 3.

In its reply, Plaintiff reiterates that the journeyman wage rate, not the wage package, is the appropriate divisor.  Pl.'s Reply Suppl. Br. 1–2.  It first points to the October 2017 amendment to the Trust Agreement, *see* Amendment to Trust Agreement, Pl.'s Trial Ex. 4 at 20–22,[7] which indicates that in the event that an employer fails to keep records as required by ERISA, Plaintiff may approximate the hours worked by dividing the total pay by the journeyman wage rate, not the wage package including benefits.  Pl.'s Reply Suppl. Br. 1–2.  Plaintiff further argues that logic dictates dividing by the journeyman wage rate to approximate hours "where there was no payment of the benefits" because "[i]f a company was underreporting hours and failing to pay fringe benefits to the pension fund, the gross pay to the employee would not reflect those amounts and those amounts would not be collected from the customer or client."  *Id*. at 2 ("Since those benefits were not paid, Defendant cannot be credited with them when calculating hours.").

The Court is persuaded by Plaintiff's argument.  Because benefits were not paid for the hours being approximated here, it seems more appropriate to not include them in the calculations.  And while the amendment to the Trust Agreement was adopted in October 2017 and therefore does not apply to the entire period at issue, it lends credence to the approach used by Plaintiff.  *See* Amendment to Trust Agreements § 11 ("In the event that an [e]mployer fails to maintain adequate, reliable, and contemporaneous records . . . . [Plaintiff] may calculate the hours worked by an hourly employee by dividing the total pay received . . . by the *journeyman wage rate* set forth in the applicable collective bargaining agreement." (emphasis added)).

---

[7] *See also* Trust Agreement § X.1 (providing that the Trust Agreement "may be amended to any extent at any time or from time to time by the unanimous vote of all the Trustees").

Defendant claims that the wage package is "what an employer pays the employee per hour," Def.'s Resp. Suppl. Br. 1 (emphasis omitted), but beyond this assertion, she has not provided evidence that the wage package is what she paid Chuck for unreported hours. Because of Defendant's failure to keep adequate records, the Court can only approximate the unpaid contributions, and Plaintiff's approach strikes the Court as "just and reasonable." *See Struben*, 2009 WL 497393, at *22 (quotation marks omitted); *see id.* at *21 ("[The employer] cannot be heard to complain that damages lack the exactness and precision of measurement that would be possible had records been kept in accordance with the requirements of ERISA.").

The Court thus accepts the estimation of unpaid contributions presented in the Updated Calibre Report. Plaintiff is awarded $38,785.85 in unpaid contributions.

## II.     Interest

Under ERISA, a successful fiduciary is entitled to receive interest on the unpaid contributions in an amount "determined by using the rate provided under the plan, or, if none, the rate prescribed under [26 U.S.C. § 6621]." 29 U.S.C. § 1132(g)(2). The Inside Agreement provides that an employer is liable for interest if legal action is necessary to collect on unpaid contributions but does not set a rate. Inside Agreement I § 2.26(B). Plaintiff seeks $8,609.92 in prejudgment interest, calculated by using the current rate prescribed under § 6621. Pl.'s Suppl. Br. 1–2. It provides its interest calculations as an exhibit. *See* Interest Schedule, Pl.'s Suppl. Br. Ex. B, ECF No. 85-2.

Defendant argues that Plaintiff is not entitled to any interest on the unpaid contributions. *See* Def.'s Resp. Supp. Br. 2. She cites to Article V of a document hand labeled as "N.E.C.A. Local #145 IBEW Pension Trust Employer Auditing Program" ("Audit Policies"). *See* Audit Policies, Def's Resp. Suppl. Br. Ex. F, ECF No. 86-1 at 21. Only one page of the document is

8

provided, and no context is given. The Court presumes that Defendant points to this document because it does not mention the recovery of interest. But Defendant does not explain how this document overrides the text of ERISA, which explicitly mandates an award of interest to a successful fiduciary. *See* 29 U.S.C. § 1132(g)(2)(B).

Plaintiff has adequately supported its request for prejudgment interest on the unpaid contributions.[8] Accordingly, the Court awards Plaintiff $8,609.92 in interest.

### III.     Liquidated Damages

ERISA provides that a court must award a successful fiduciary an amount equal to the greater of either (a) interest on the unpaid contributions or (b) liquidated damages provided for under the plan in an amount not in excess of twenty percent of the unpaid contributions. *See* 29 U.S.C. § 1132(g)(2)(C). Plaintiff requests $7,757.17 in liquidated damages, an amount constituting twenty percent of the unpaid contributions, noting that the liquidated damages policy under the Inside Agreement would result in an award in excess of twenty percent of the delinquent contributions. *See* Pl.'s Suppl. Br. 1–2. As the earliest unpaid contributions stem from 2015, *see, e.g.*, Updated Calibre Report 4–5, the Court agrees that the liquidated damages provision in the Inside Agreement—which provides for damages of $50.00 "per day for each and every working day the reports and contributions are delinquent," Inside Agreement I § 2.26(B)—would exceed ERISA's cap. As such, twenty percent of the unpaid contributions is the appropriate amount. *See also* Bench Trial Tr. 28:4–18 (testimony acknowledging that the liquidated damages provision under the CBA would result in an amount of liquidated damages greater than the maximum permitted by ERISA).

---

[8] The Court notes that Defendant makes no objection to Plaintiff's actual calculation of interest.

9

Defendant contends that Plaintiff is entitled to an amount of only ten percent of the unpaid contributions as liquidated damages, pointing again to the Audit Policies. Def.'s Resp. Suppl. Br. 2. As Plaintiff points out, the section to which Defendant cites establishing the ten percent rate applies "during the initial audit process and prior to filing of a lawsuit." Pl.'s Reply Suppl. Br. 2. The subsequent section, which Defendant ignores, provides that "[d]epending upon the nature of the delinquency, liquidated damages shall be assessed on all delinquencies pursuant to the appropriate [CBA] in addition to the payment under" the prior section, Audit Policies § 5.02. *See* Pl.'s Reply Suppl. Br. 3.[9] Moreover, Defendant again fails to explain how this document takes precedence over ERISA's mandates.

Plaintiff is awarded $7,757.17, or twenty percent of the unpaid contributions, in liquidated damages.

## IV.   Audit and Court Costs

Under the Inside Agreement, an employer is liable for "all reasonable costs incurred" should legal action be necessary to recover delinquent fees, including "filing fees, . . . [and] audit costs." Inside Agreement I § 2.26(B). An award of audit costs is likewise authorized by ERISA. *See* 29 U.S.C. § 1132(g)(2)(E) ("In any action . . . to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan such other legal or equitable relief as the court deems appropriate."); *see also Trs. of Teamsters Union Loc. 142 Pension Tr. Fund v. Actin, Inc.*, Cause No. 2:07-CV-289-TS, 2010 WL 3893982, at *10 (N.D. Ind. Sept. 28, 2010) ("Under ERISA, audit costs are part of the relief due to a prevailing plaintiff under 29 U.S.C. § 1132(a)(2)(E) as 'other legal or equitable relief.'" (citing *Moriarty ex rel. Loc. Union No. 727 v. Svec*, 429 F.3d 710, 721 (7th Cir. 2005))). Plaintiff requests $1,265.00 in audit

---

[9] The Court notes that without any context to the Audit Policies, it cannot firmly ascertain to whom this document applies.

10

and court costs, Pl.'s Suppl. Br. 2, consisting of $825.00 for the audit performed by Calibre Group, *see* Calibre Group Invoice, Pl.'s Trial Ex. 6 at 18, and $440.00 in court costs, *see* Original Itemization 1, Pl.'s Trial Ex. 7 (listing $400.00 as the filing fee and $40.00 as the fee for service of process).

As Plaintiff has adequately supported its request for audit and court costs, the Court awards it $1,265.00 in costs.

V.     **Attorney's Fees**

Finally, Plaintiff requests $14,176.25 in attorney's fees for the fees incurred by its counsel "through the date of filing th[e] supplemental brief, plus one hour of anticipated time by the undersigned counsel, at a rate of $250 per hour," to review Defendant's responsive pleading and the Court's final order. Pl.'s Suppl. Br. 2. In support, it provides an itemization of the hours expended by its counsel and their requested rates. *See* Updated Itemization, Pl.'s Suppl. Br. Ex. D, ECF No. 85-3. Defendant opposes the request, indicating that Plaintiff should only be awarded its attorney's fees through the bench trial, which would come to $11,088.75. *See* Def.'s Resp. Suppl. Br. 2.

A fiduciary that successfully enforces § 1145 is entitled to "reasonable attorney's fees . . . to be paid by the defendant." 29 U.S.C. § 1132(g)(2)(D); *see also* Inside Agreement I § 2.26(B) (providing that an "[e]mployer shall be liable . . . for all attorneys' fees" where legal action is necessary to recover delinquent contributions). To calculate fees in ERISA cases, courts use the lodestar method—reasonable hourly rate multiplied by the number of hours reasonably expended. *See Anderson v. AB Painting & Sandblasting Inc.*, 578 F.3d 542, 544 (7th Cir. 2009) (applying the lodestar method to an ERISA case). The reasonable hourly rate is to be judged "according to the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S.

11

886, 895 (1984). "The best evidence of the market rate is the amount the attorney actually bills for similar work." *Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014). "[I]f that rate can't be determined, then the district court may rely on evidence of rates charged by similarly experienced attorneys in the community and evidence of rates set for the attorney in similar cases." *Id*. The fee applicant "bears the burden of establishing the market rate for the work." *Id*.

The itemization shows rates between $225.00 and $300.00 per hour for Plaintiff's counsel's work on this case. Although Defendant does not object to these rates, the Court finds that Plaintiff has failed to satisfy its burden to support its requested rates. Beyond a statement by Plaintiff's counsel in closing argument at the bench trial that these hourly rates are reasonable, *see* Bench Trial Tr. 124:21–23, Plaintiff has provided nothing to support that these rates conform to prevailing market rates in the relevant community, such as an affidavit from an attorney. *Cf. Pakovich v. Verizon Ltd Plan*, No. 09-cv-0090-MJR, 2010 WL 1654159, at *3 (S.D. Ill. Apr. 22, 2010) (denying a motion for attorney's fees where counsel submitted only an invoice showing the charges and "provided no documentation regarding a reasonable hourly rate").

Furthermore, Plaintiff does not explain why it should receive attorney's fees for the time it spent on the updated audit and supplemental briefing after the Court found its initial calculations were not just and reasonable, even after Defendant argued that Plaintiff should only receive its attorney's fees incurred through the bench trial, *see* Def.'s Resp. Suppl. Br. 2.

The Court will address the issue of attorney's fees separately so that Plaintiff can provide proper support for its request. Plaintiff is directed to submit additional briefing supporting its requested hourly rates and its request for fees incurred after the bench trial. Defendant may file a response within two weeks after service of Plaintiff's briefing.

**CONCLUSION**

For the foregoing reasons, Plaintiff is awarded $38,785.85 in unpaid contributions; $8,609.92 in interest on the unpaid contributions; $7,757.17 in liquidated damages; and $1,265.00 in audit and court costs. Plaintiff is directed to submit additional briefing on why the amount of attorney's fees it requests is reasonable by October 6, 2023. Defendant may file a response within two weeks after service of Plaintiff's briefing.

Entered this 22nd day of September, 2023.

s/ Sara Darrow
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE
