UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| TRUSTEES OF THE N.E.C.A./LOCAL 145 I.B.E.W. PENSION PLAN, AS COLLECTION AGENT FOR ALL FRINGE BENEFITS, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 4:18-cv-04045-SLD-JEH |
| LINDA K. MAUSSER, individually and d/b/a QCA ELECTRIC, | ) ) ) | |
| Defendant. | ) ) | |

<u>ORDER</u>

Before the Court are Defendant Linda K. Mausser, individually and d/b/a QCA Electric's motion to reconsider the September 22, 2023 Order, Mot. Reconsider, ECF No. 91; Plaintiff Trustees of the N.E.C.A./Local 145 I.B.E.W. Pension Plan, as Collection Agent for All Fringe Benefits' motion for attorney's fees, ECF No. 92; Plaintiff's supplemental motion for attorney's fees, ECF No. 94; Defendant's motion to amend her motion to reconsider, ECF No. 98; Defendant's motion to strike part of Plaintiff's exhibit four from trial, ECF No. 99; and Defendant's motion to dismiss, ECF No. 102. For the reasons that follow, the motions to reconsider and amend are DENIED, the motion to strike is GRANTED IN PART, the motion to dismiss is DENIED, the motion for attorney's fees is GRANTED IN PART, and the supplemental motion for attorney's fees is DENIED.

## BACKGROUND[1]

This is an action brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461. Plaintiff sued Defendant for unpaid contributions allegedly due to it pursuant to collective bargaining agreements ("CBAs") and an Agreement and Declarations of Trust ("Trust Agreement"). *See* Compl., ECF No. 1. After a bench trial, *see* Bench Trial Tr., ECF No. 82, the Court found that Defendant was liable to Plaintiff for unpaid contributions, interest on the unpaid contributions, liquidated damages, costs, and attorney's fees. Feb. 6, 2023 Order 18, ECF No. 84. It determined that Defendant had failed to keep records sufficient to permit Plaintiff to ensure that she made all required contributions, as mandated by ERISA, *id.* at 8–10, and that, because of this failure, it was reasonable to use her Schedule C tax forms to generate an estimate of the hours worked by her sole employee, Chuck Mausser,[2] *see id.* at 5, in order to approximate the amount of unpaid contributions, *see id.* at 13.

However, it found that Plaintiff's auditor had not made a just and reasonable approximation of unpaid contributions based on Defendant's tax forms because he did not adjust for the cost of materials included in Defendant's gross receipts. *Id*. at 14–15. The Court thus directed Plaintiff to provide an updated audit report in which the cost of materials was subtracted from the gross receipts for each year prior to any further steps in the calculation. *Id*. at 17. It stayed judgment to allow for this recalculation, as well as for a recalculation of the amount of interest and liquidated damages and further briefing on Plaintiff's request for attorney's fees. *Id*. at 17–18.

---

[1] The Court presumes familiarity with its prior orders. *See* Feb. 6, 2023 Order, ECF No. 84; Sept. 22, 2023 Order, ECF No. 90.

[2] Charles "Chuck" Mausser is Defendant's spouse. *See* Bench Trial Tr. 88:23–24. Because he shares a last name with Defendant, the Court will refer to him as "Chuck."

Plaintiff provided the updated report, and on September 22, 2023, the Court awarded

Plaintiff $38,785.85 in unpaid contributions, $8,609.92 in interest on the unpaid contributions,

$7,757.17 in liquidated damages, and $1,265.00 in audit and court costs.  Sept. 22, 2023 Order

3–4, 13, ECF No. 90.  But the Court concluded that Plaintiff had not sufficiently supported its

request for attorney's fees, so the Court directed additional briefing on two issues: (1) the

reasonableness of Plaintiff's requested hourly rates; and (2) Plaintiff's request for fees incurred

after the bench trial.  *Id.* at 12.  Plaintiff has now submitted two motions for attorney's fees, *see*

*generally* Mot. Att'y Fees; Suppl. Mot. Att'y Fees, which Defendant opposes, Resp. Mot. Att'y

Fees, ECF No. 95; Resp. Suppl. Mot. Att'y Fees, ECF No. 97.

In the meantime, Defendant filed motions to reconsider various parts of the September

22, 2023 Order, *see generally* Mot. Reconsider; Mot. Amend, which Plaintiff opposes, *see* Resp.

Mot. Reconsider, ECF No. 93.  Defendant also filed a motion to strike part of one of Plaintiff's

trial exhibits, *see generally* Mot. Strike, and a motion to dismiss the case with prejudice, arguing

that Plaintiff submitted a false document to the Court, *see generally* Mot. Dismiss.  Plaintiff

agrees to withdraw part of its exhibit, Resp. Mot. Strike 2, ECF No. 100, but opposes dismissal,

Resp. Mot. Dismiss, ECF No. 103.

## ANALYSIS

### I.    Motion to Strike Exhibit and Motion to Dismiss

Defendant moves to strike part of Plaintiff's exhibit four from trial.  Mot. Strike 1.

Exhibit four is the Trust Agreement, Pl.'s Trial Ex. 4 at 1–19, along with a document titled

Amendment to the Restated Agreement and Declaration of Trust of the NECA-IBEW Pension

Trust Fund, which the Court referred to as the "Amendment to Trust Agreement, Pl.'s Trial Ex. 4

at 20–22," in its earlier orders.  *See* Feb. 6, 2023 Order 3–4.  Defendant moves to strike the

Amendment to Trust Agreement, arguing that it is not legally binding as there is no evidence that it was "signed, dated or ratified by all trustee's [sic] or stamped and approved by the International Office of the IBEW." Mot. Strike 2. Defendant points out that the Amendment to Trust Agreement states that it amends Article IV, Section 8, *see* Amendment to Trust Agreement 1, but there is no Article IV, Section 8 of the Trust Agreement, *see generally* Trust Agreement Art. IV.; Mot. Strike 1. Though Plaintiff suggests that Defendant has waived any authenticity objection to the Amendment to Trust Agreement, it acknowledges that the Amendment to Trust Agreement is, in fact, not an amendment to the Trust Agreement relevant to this case but is instead "language from another NECA-IBEW pension trust within the state." Resp. Mot. Strike 1–2. Thus, it agrees to withdraw the Amendment to Trust Agreement "to ensure the record is clear and accurate." *Id.* at 2. In light of Plaintiff's agreement, the Court GRANTS IN PART the motion to strike. The Court will not consider pages 20 through 22 of Plaintiff's exhibit four from trial. Those pages will remain as part of the record, however, so that if an appeal is filed, the Seventh Circuit will be able to review the Court's assessment of how exclusion of this document affects past orders.

After Plaintiff filed its response acknowledging that the Amendment to Trust Agreement was not a document relevant to this case, Defendant filed a motion to dismiss the case "with prejudice on the grounds that . . . Plaintiff submitted false documents to the court." Mot. Dismiss 1. She claims that the "documents . . . were intended to deceive, mislead and influence the court" and that Plaintiff "admitted to deliberate fraud of the court." *Id.* Not only does Defendant overstate what Plaintiff "admitted to" in its response—counsel merely stated that he "misread[] and misunderst[ood] the nature of the document," Resp. Mot. Strike 2—she states no legal basis for her motion and cites no Federal Rules of Civil Procedure or Local Rules. "[E]ven pro se

litigants must support and develop their arguments with legal authority." *Wolf v. Scobie*, 28 F.
App'x 545, 547 (7th Cir. 2002).  The Court DENIES the motion to dismiss, though it will
consider if exclusion of the Amendment to Trust Agreement requires alteration of its earlier
rulings along with the motions to reconsider.

## II.     Motions to Reconsider

Defendant filed a motion to reconsider and a motion to amend her motion to reconsider
which "clarif[ies] language supporting [her] argument," Mot. Amend 1.  For the most part these
motions are the same, however, so the Court cites the motion to amend only where it differs from
the motion to reconsider.

In the February 6, 2023 Order, the Court concluded that because Defendant failed to keep
accurate records from which the Court could determine the amount of her unpaid contributions,
it would accept a just and reasonable approximation of unpaid contributions based on an estimate
of covered hours worked calculated by subtracting the cost of materials from Defendant's gross
receipts for each year and dividing that sum by the appropriate journeyman wage rate.  Feb. 6,
2023 Order 10–17.  In its September 22, 2023 Order, the Court relied on this calculation to
award Plaintiff $38,785.85 in unpaid contributions.  Sept. 22, 2023 Order 5–8.

Defendant's first argument for reconsideration is that the wage rate used in the
calculation should have included not only hourly journeyman wage but also the fringe benefits
contributions an employer is required to make under the applicable CBA, the Inside Agreement.
Mot. Reconsider 1.  This argument was already made and rejected by the Court.  *See* Sept. 22,
2023 Order 7–8.  The only new part of Defendant's argument is her reliance on a provision of
the Inside Agreement stating that "hourly compensation . . . is the sum of the hourly wage and
fringe benefits contributions."  Mot. Reconsider 1 (referring to Inside Agreement § 2.26(E), Pl's

Trial Ex. 2).  This does not undermine the Court's reasoning, which was that because benefits were not paid for the hours being approximated, it was appropriate not to include them in the wage rate used to estimate hours.  *See* Sept. 22, 2023 Order 7.  The statement Defendant relies on has no bearing on how to estimate hours worked when an employer fails to keep adequate records.  It merely means that an employee does not receive full compensation for his work unless the employer pays him his hourly wage and makes contributions to the benefit funds on his behalf.  *See* Inside Agreement § 2.26(E).  The Inside Agreement acknowledges that the fringe benefit contributions are "indirect compensation" for an employee.  *Id.*  The contributions are paid not to the employee but to various funds based an employer's gross payroll or the number of hours the employer's employees work, *id.* § 2.26(A), and the employee gets access to health, welfare, and retirement benefits, for example, through those funds, *see id.* §§ 2.18–2.20(B). Total hourly compensation is not how much an employee is paid per hour, instead it is the "total hourly economic benefit" the employee receives for his work.  *Id.* § 2.26(E).  When estimating the hours worked by an employee for whom contributions were not made, then, the appropriate hourly rate to use is the wage rate.

Next, Defendant argues that "[t]he court has ordered you take gross receipts and subtract material then subtract what Defendant has already paid thru [sic] EPR LIVE [sic] which is the rate set forth in CBA Section 2.26.(E) [sic] Compensation."  Mot. Reconsider 1.  It is unclear what Defendant is referring to or the impact of this argument.  The Court's approved method of estimation did not include subtracting payments Defendant already made through EPRLive,[3] *see* Feb. 6, 2023 Order 17, nor does Defendant explain why that would make sense in estimating hours worked.

---

[3] EPRLive is "an online reporting website" for hours worked and contributions made.  Feb. 6, 2023 Order 9.

Third, in response to the Court's statement that "she has not provided evidence that the wage package is what she paid Chuck for unreported hours," Sept. 22, 2023 Order 8, Defendant argues that she was not permitted by Internal Revenue Service rules to pay Chuck a salary, so it was inaccurate "for the [C]ourt to say there is no proof Chuck was paid a wage," Mot. Amend 2. Defendant misunderstands the context of the Court's statement. The Court was not faulting Defendant for failing to pay Chuck a wage or salary. Instead, it was saying that Defendant had not provided any individualized support for her claim that the wage package—meaning hourly pay plus fringe benefit contributions—was the appropriate divisor for estimating the hours Chuck worked. *See* Sept. 22, 2023 Order 7–8. Perhaps it was erroneous to suggest that Defendant could have paid Chuck a wage for his work. A more accurate statement might have been that there is no evidence that Defendant's labor costs included an amount intended for fringe benefit contributions.

In any case, ultimately the Court was merely determining a way to justly and reasonably *estimate* unpaid contributions. Defendant's arguments are quibbles about the precision of the values the Court relied on in making that estimation. But as the Court has noted, it was Defendant's failure to keep adequate records that required reliance on an approximation of unpaid contributions. *Id.* at 8. Nothing about the quibbles Defendant raises convinces the Court that the procedure Plaintiff used to approximate unpaid contributions—"divid[ing] the estimation of labor costs for each year (calculated by subtracting the cost of materials from the gross receipts) over twelve months, then divid[ing] that figure by the appropriate journeyman wage rate," and then calculating the contributions that would be due for the resulting estimate of hours worked, *see id.* at 6—was unjust or unreasonable.

Defendant's second-to-last argument is quite unclear. She argues that she followed the applicable Inside Agreement by providing required records and reports. *See* Mot. Reconsider 2. She also points to October 2017, which is when the Amendment to Trust Agreement was dated, as a date relevant to her argument. *See id.* The Amendment to Trust Agreement included a provision that hours worked could be estimated by dividing total pay by the journeyman wage rate. *See* Sept. 22, 2023 Order 7. Defendant appears to be arguing that Plaintiff could not estimate hours based on the wage rate until October 2017. *See* Mot. Reconsider 2 ("Prior to October 2017 the new amendment there is no discretion that the Fund may calculate the hours worked by an hourly employee by dividing the total pay received by the employee . . . by the journeyman wage rate . . . ."). In the motion to amend, Defendant added an argument that the Amendment to Trust Agreement was not binding, Mot. Amend 3, though ultimately her requested relief was the same between the original motion to reconsider and the motion to amend, *compare* Mot. Reconsider 2, *with* Mot. Amend 3.

The Court has already stricken the Amendment to Trust Agreement from the record. But the exclusion of that document does not change any of the Court's conclusions. The Court has already concluded that Defendant failed to keep adequate records as she was obligated to do under ERISA. Feb. 6, 2023 Order 8–10. Though the Court also noted that the Amendment to Trust Agreement required recordkeeping, it based its conclusions on Defendant's statutory obligation to keep records, not any contractual obligation. *Id.* at 8 n.8. And though the Court pointed to the Amendment to Trust Agreement's provision about how a fund could estimate unpaid contributions when an employer fails to keep adequate records as bolstering or lending credence to its approach to estimating Defendant's unpaid contributions, *see id.* at 16 n.15; Sept. 22, 2023 Order 7, the Amendment to Trust Agreement was never the basis for the Court's

conclusions.  The Court finds its estimation of Defendant's unpaid contributions just and reasonable even without reliance on the Amendment to Trust Agreement.

Defendant's last argument is that her right to be presumed innocent until proven guilty beyond a reasonable doubt has been violated.  Mot. Reconsider 1.  But this is a civil case. Defendant was not found guilty—she was found liable.  And the burden of proof in a civil case is proof by a preponderance of the evidence, not beyond a reasonable doubt.  *See Conley v. United States*, 5 F.4th 781, 794–95 (7th Cir. 2021) (noting that the presumption is that the burden of proof in civil cases is proof by a preponderance of the evidence and that there are few exceptions to that presumption).

The motion to reconsider and motion to amend are DENIED.

### III.    Motions for Attorney's Fees

Plaintiff asks for $13,057.50 in attorney's fees in its first motion, Mot. Att'y Fees ¶ 7, and an additional $1,100.00 in its supplemental motion, Suppl. Mot. ¶ 7.  Defendant points out that the amount requested in the motion for attorney's fees is more than what was requested at trial and that some of the charges differ from earlier itemizations.  Resp. Mot. Att'y Fees 1.  She argues that Plaintiff "should not be allowed to have an open book to keep charging more after trial and allowed to change and add charges from before trial."  *Id.*; *see also* Resp. Suppl. Mot. Att'y Fees 1 (requesting that the Court deny the supplemental motion for fees because Plaintiff "should not be allowed to continue adding attorney fees").

A fiduciary that successfully enforces § 1145 is entitled to "reasonable attorney's fees . . . to be paid by the defendant."  29 U.S.C. § 1132(g)(2)(D); *see also* Inside Agreement I § 2.26(B) (providing that an "[e]mployer shall be liable . . . for all attorneys' fees" where legal action is necessary to recover delinquent contributions).  To calculate fees in ERISA cases, courts use the

lodestar method—reasonable hourly rate multiplied by the number of hours reasonably expended. *See Anderson v. AB Painting & Sandblasting Inc*., 578 F.3d 542, 544 (7th Cir. 2009) (applying the lodestar method to an ERISA case).

### A. Hourly Rate

The reasonable hourly rate is to be judged "according to the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). "The best evidence of the market rate is the amount the attorney actually bills for similar work." *Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014). "[I]f that rate can't be determined, then the district court may rely on evidence of rates charged by similarly experienced attorneys in the community and evidence of rates set for the attorney in similar cases." *Id*. The fee applicant "bears the burden of establishing the market rate for the work." *Id*.

Here, Plaintiff seeks attorney's fees based on hourly rates between $225 and $275 for attorney Michael W. Halpin and between $260 and $300 for John Callas. Mot. Att'ys Fees ¶ 6. Halpin provides an affidavit stating that he charges between $225 and $275 to his clients and that these rates are "reasonable in light of the community standards for attorneys [sic] fees with 13 years of experience in the practice of law and the handling of cases such as the instant case." Halpin Aff. ¶ 3, Mot. Att'y Fees Ex. B, ECF No. 92 at 9–10. He also states that Callas "charges $300.00 per hour which is reasonable in light of the community standards for attorney fees with 30 years of experience in the practice of law and the handling of cases such as the instant case." *Id.* ¶ 4. He notes that Callas charged $260 per hour until 2018. *Id.* In the motion for attorney's fees, Plaintiff represents that the itemizations provided are what it was actually billed for this case. Mot. Att'y Fees ¶¶ 5–6. As the rates requested are what Plaintiff has actually been

charged by Halpin and Callas, and Halpin attests that the rates are reasonable, the Court finds the rates reasonable.

### B. Hours Reasonably Expended

The Court is supposed to "exclude from th[e] . . . fee calculation hours that were not reasonably expended." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (quotation marks omitted). Neither party addresses what hours claimed were or were not reasonably expended.

However, the Court specifically ordered Plaintiff to provide briefing on "its request for fees incurred after the bench trial," including fees for "the updated audit and supplemental briefing" which were necessary because the Court found Plaintiff's "initial calculations were not just and reasonable." Sept. 22, 2023 Order 12. Despite this clear instruction, Plaintiff did not include any such briefing in its motion for attorney's fees or its supplemental motion for attorney's fees. Indeed, it did not mention the issue at all until its reply brief. *See* Reply Att'y Fees ¶ 2, ECF No. 96. Even then, Plaintiff simply stated that "the ERISA statute on attorney's fees does not limit attorney's fees to those incurred through trial." *Id.* The supplemental motion for fees asks for fees incurred responding to Defendant's motion to reconsider, which was filed after the bench trial. Suppl. Mot. ¶¶ 4–5.

Because of Plaintiff's failure to support them, the Court excludes any hours expended after the bench trial held on November 23, 2022, including the hours represented in the supplemental motion. The Court finds that 50.25 hours were reasonably expended. *See* TABS Fees, Attorney Halpin 1–2, Mot. Att'y Fees Ex. A, ECF No. 92 at 3–4 (28.5 hours total for Halpin through February 23, 2022); TABS Fees – Attorney Callas 1, Mot. Att'y Fees Ex. A, ECF No. 92 at 5 (8.25 hours total for Callas through December 27, 2021); Activities Export 1–3,

Mot. Att'ys Fees Ex. A, ECF No. 92 at 6–8 (18.75 hours total for Halpin and Callas starting April 7, 2022, with 5.25 hours incurred after November 23, 2022).[4]

### C.  Total Award

Using the hourly rates requested, this results in a total award of $11,763.75.  *See* TABS Fees, Attorney Halpin 2 ($6,412.50 total for Halpin's work through February 23, 2022); TABS Fees – Attorney Callas 1 ($2,295.00 total for Callas's work through December 27, 2021); Activities Export 1–3 ($4,350.00 total for Callas and Halpin's work starting April 7, 2022, with $1,293.75 incurred after November 23, 2022).

**CONCLUSION**

For the foregoing reasons, Defendant Linda K. Mausser, individually and d/b/a QCA Electric's motion to reconsider the September 22, 2023 Order, Mot. Reconsider, ECF No. 91, and motion to amend the motion to reconsider, ECF No. 98, are DENIED.  Defendant's motion to strike part of Plaintiff's exhibit four from trial, ECF No. 99, is GRANTED IN PART.  Her motion to dismiss, ECF No. 102, is DENIED.  Plaintiff Trustees of the N.E.C.A./Local 145 I.B.E.W. Pension Plan, as Collection Agent for All Fringe Benefits' motion for attorney's fees, ECF No. 92, is GRANTED IN PART, and its supplemental motion for attorney's fees, ECF No. 94, is DENIED.  Plaintiff is awarded $11,763.75 in attorney's fees.  The Clerk is directed to enter judgment and close the case.

Entered this 26th day of February, 2024.

s/ Sara Darrow
_____
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE

---

[4] Defendant argues that Plaintiff added charges for work done before the trial that were not included on its request for fees made at the trial.  *See* Resp. Mot. Att'y Fees 1.  Plaintiff explains that this is because the itemization of fees used at trial was prepared for the pretrial conference in early November 2022.  Reply Att'y Fees ¶ 1.  It added the actual hours expended between the time the itemization was created and trial before submitting its current request for fees.  *See id.*